WILLIAM HARDY SAUNDERS, JR.
Artist & Photographer
Elm Court; 300 Elm Road #225
Princeton, New Jersey 08540
Telephone: (609) 454-3766
E-Mail: wsartistphotographer@yahoo.com

Attorneys for Defendant: Municipality of Princeton, New Jersey
Mason, Griffin & Pierson, PC
Trishka Waterbury Cecil; Attorney at Law
101 Poor Farm Road
Princeton, New Jersey 08540
Phone: (609) 921-6543; http://www.mgplaw.com

*Plaintiff: Pro Se*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **WILLIAM HARDY SAUNDERS, JR., Artist and Photographer,** | ) | Case No.:  **3-19-cv-19018** |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **Arts Counsel of Princeton;** and **Jim Levine,** as the Executive Director, and **Maria Evans,** as the Artistic Director, and are each, being sued Individually and in Official Capacity; and, City, Municipality, Mayor **Liz Lampert,** and Council Members, Town of Princeton, New Jersey, Historic Preservation Commission, and Commissioners, and **Elizabeth H. Kim,** Officer; and, in all, each are being sued Individually and in Official Capacity; and, **Shirley Satterfield,** as Individual, and Witherspoon-Jackson Neighborhood Association, also being sued; and, Public Arts Selection Committee; and, **Leticia Fraga,** Councilwoman, being sued Individually and in Official Capacity; Wise Preservation Planning, as entity, and **Seth B. Hinshaw,** sued Individually; and, in Official Capacity; Joint Effort Safe Streets Program, entity, and **John Bailey,** Organizer, each, being sued Individually and in Official Capacity; and, the Studio Hillier, entity, and **Barbara A. Hillier,** and **Robert Hillier,** each are being sued Individually; **Timothy M. Andrews,** Chief Executive Officer, and the Advertising Specialty Institute, each, being sued Individually; and, **Marion Davia,** sued as Individual; and, in all, are | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **CIVIL RIGHTS ACTION: COMPLAINT, SEEKING DECLARATORY RELIEF and DAMAGES**  <br><br><br><br><br> **Jury Trial Demand** |
| *Defendants.* | ) | |

## AMENDED COMPLAINT

Plaintiff, Pro Se, having filed Case No. 3-19-cv19018, therefore, on order of United States District Court for District of New Jersey, hereby comply together with originally do re-alleging made part of this amended, are allegations, in seeking a **Declaratory Judgment** to issue, granting relief or hearing to define rights of parties; and, is sought, injunction to issue. Additional, is sought damages. Herewith presented, filed timely, according to Honorable District Court Judge's order extending specified time for filing amendments, 30 days following determination *pro se* request *pro bono* attorney appointed for disabled-plaintiff litigant.

## PRELIMINARY STATEMENT

1.      Black-citizens of Witherspoon-Jackson ("W-J") a community, and historic Black enclave is a district at geographic center Princeton, New Jersey, a small distinct and unique Black enclave known nation-wide having heightened recognition for its direct connection to America's "story" of slavery. A settlement by people of color and race "Negros" is dating back to 1700's, historically, began, then a safe and secure environment for run-away slaves, and transfer 'Underground Railroad' point a significant history; has become on into recent times a core identity Black inhabitants of 'slave' ancestry. That era of Black-slavery or "story" persist upon plaintiff, of no exception to his folks going back generations, making him inherent interest to outcome declaration of rights in this lawsuit. To what heritage a "Black issue" critical and heated controversy critical to all American citizens of whether a painted mural dedicated to non-citizens will unduly burden that history to degree "right to be let alone" or the survival "purity" of "story" freedom of expression from being altered, changed, diluted, and finally removed. Is by same descendants of White Slave-holders are presently a few White elites with plans commercial enterprise, and *"preferential treatment"* for illegal-immigrants reach all four corners Separation of Powers lost within a vaccum Sanctuary Jurisdiction, now cause plaintiff irreparable harm done lost of dignity for a proud Black-American Artist, so to bring this civil action.

2.      An extraordinary occurrence, unusual demonstration of courage and faith a lone Black man long time resident: with family tree Slavery, speaking. passionately, and on behalf what ordinarily peaceful black-folks of the W-J, are in opposition to a publicly funded art project said by White elites is "diversity" dedicated to Hispanic culture, a painted mural on wall of structure, a place which normally would represent Slave history. Of what official misconduct with racial bias, by a few White-elites bent on removing last remnants or vestige remain W-J's sanctity "story" of slave history. The dignity. The identity, steeped in Black heritage, Whites whom tortured black-culture almost eliminating, that humanity.

3.      Was at event a meeting held by defendants a few White elites, when that man spoke on burning subject a mural, not its content, rather, the "contexts" to past slave era, what history will remain intact, a heated controversy over an "Black issue" where first a special treatment for Hispanics, and then a plan involve White elites >to later on give by appeasing Black folks, in giving them a form of Southern hospitality (concur with back in the slave days of old) a kind of 'benevolence' *i.e.,* mural dedicated to Black history< His statement opposition to enforced public art project- very little chance valid input by Black community; he said, and inspired by truth. Those words found in article, Town Topics Newspaper, 7/24/2019; his eloquent words…, *as **quoted-***

*"...This town has a habit of taking action without asking the African American community. With many issues in the past, they didn't ask, and neither did the Arts Council ask the African American community..., the need for further discussion..., the <discussion is larger than a discussion of just public art there's a much larger question here>"* (Titled- "Proposed Mural for Witherspoon-Jackson Stirs Controversy")

4.      Whereby, defendants, Art Council an arm of Municipality join together by enlisting private concerns, for ends of racial animus, acts carried-out under color of law by various authorities, with agreement or meeting of minds, actions, and inactions, of City Council members, also discriminatory misappropriation federal grant monies for the arts. The officers, and officials, Commissions, and Committees, taking unconstitutional votes, by cabal, to manipulate City laws; using the Ordinance- #2016-16, as a 'bargaining chip' in goal special treatment for one ethnic group, pitted against another: sole intent, to disenfranchise Black folks of their history, and in doing so degrade horrors of slavery, as part of heritage, dignity, identity. A holly connection to W-J Black Landmark district on National Register, a place, of setting, warrant declaration of 'no[ murals' for any and all reasons, where do change sacred character Black enclave its ambiance to be preserved in history, from slavery to present, and for next generation of Black children.

5.      A "Black issue" at constitutional core of liberty, and property rights, fundamental to every American as protected to what basic of self-respect for people of color, does exceed all other rights claimed in our Constitutional Amendments, because fact un-enumerated, yet, within soul of every person a path to destiny of own humanity, found in each and every heart, what's in the heart-secured heritage. Heritage, is type of freedom of expression a central part each individual's make-up to which propels very being' existence, right to privacy pales; right to equal civil rights pales; and so on, because in order to get the later, first come the former or preservation of heritage.

6.      Heritage, and like American-citizenship qualify almost sacrosanct, is on condition that none other have experienced [even vaguely close] to such length, and lengths, a period time complete lost of freedom, faith, hope, can compare to Slavery. That, wherever, such history, is inescapable a mural that depletes that history of a certain class made "victim," the institution of community becomes immune to threat demoralization by means mural painting dedicated to a different another group, essentially non-citizens or illegal immigrant; and, may even be immune from those Black inhabitants deciding on its own mural dedicated to black history, when, the property is liberty exception to all art projects that demoralize that history "story" of slavery, simply by any mural being there, demean character, cherished nature of ambiance.

7.      A fight to the end, no more slavery in practice, nor of the mind, or what we' Black people view daily, a negative mural, not in contents, but rather, of its "contexts." Opposition to White elite

of "colored folks" or it's "soul" under threat, the explicit connection by generations, to slavery. Gone unaltered, unto, and now, comes a mural: where all of slave history regarding past, could not be done away by defendants, resilient is black history a pride in self, heritage. A single painted mural has accomplished the misdeed, wherein, sponsored by White elites. Whereby, a painted mural dedicated to another and different culture is only beginning stage longrange plan to dismantle the W-J's slave heritage. In order to sustain that unique ambiance of Black self-respect there must not be any murals to stand in a sacred place, and regardless competing >murals< of on or about diversity, nor heritage. There is only one proper heritage so designated W-J "Black issue" as landmark place, district, on National Register, and any or all 'murals' negative or positive to heritage should not be, that will ultimately make decline ambiance of sacred ground attached to history of slavery.

6.     Recognized world-wide history of slavery, and is for a Black community its responsibility, by reason constitutional guarantee equal civil right to determine, what, where, how, and when, sole dedication preserving that history. However, plaintiff contends, whether Hispanic or Latino, or Black 'mural' painting, none should exist in a place once slave settlement, of reverence, of those whom lost their lives in effort for freedom for all, that any murals, within such a sacred district, demeans that legend, history, and heritage: keeping in mind, about a football field in length of distance from that mural placement, does rest some of those slaves and there family lineage, is the historic 'Black Section' of Princeton Cemetery. That mural portends, slavery means nothing, and a slaves lost of life> 'has nothing to do with integral part of the "story" slavery within W-J history' or what fundamental to a people's race and color, identity.

7.     Slavery, is an unparalleled America's "story" of sacrifices. W-J defines such a place. Same as does the moral dignity but cannot be found in the constitutional protections as heritage, one must look to the 9th Amendment. In essence, the "Black issue" is humanity a slave's place of safety, Underground Railroad, and a 'mural' in dedication would demean that history. In other words, Princeton demonstrates place where revolutionary war fought, and on those grounds of the 'Princeton Battlefield' mostly Americans sacrificed their lives for very ideals -against 'murals' in sacred places- that commemorate those sacrifices, for freedoms. So to, a 'mural' dedicated to black slaves whom gave their lives so others could be free, placed in the W-J would be equally inappropriate, as is the mural now standing dedicated to Hispanic culture. This action is brought on because defendants, a few wealthy White-elites accompanying a few Black wealthy bourgeois class joined on behalf negative progress for community, and disingenuous (that do not reflect majority opposition, or *See: above statement,* plea). At very least act as a blanketed unethical-cabal when in double voting from several City authority platforms; different Boards, and Committees; and, also Commissions; or, and at same time working for private [Arts Council] organization with city interest

for unfairness, wherein, singularly that same person is official and officer having diverging mandates, different of interest but now voting unethical in several different jurisdictions of city government, for a preplanned outcome 'mural' negative to one class of people W-J citizens, Black.

8.    A lawsuit exposing 'conflicting interests' surface as heated dispute over a "Black issues" where opposition to mural. Bring to bare injury and harm, irreparable, about "contexts" of public art being used by defendants particular wealthy class White elites removing black heritage, due to Sanctuary Jurisdiction for "preferential treatment" of non-citizens illegal-immigrants, and specifically pushed upon people of color from city's voting process "conflicting interests" of racial indifference. Is at bottom; and, defendants form a cabal, to allow, racially biased but those participating individuals consisting voting, and with support of private concerns of commercial enterprise. A goal, of White-elite gentrification, has unearthed defendant's problem distinct unlawful "conflicts of interests meet unconstitutional acts along with violation Separation of Powers. Are defendants, in action, cause chaos the type where a normally passive Black formerly slave-enclave historic neighborhood, municipality intimidation cause Black-Americans to take defensive position, and plaintiff's civil rights action, of fierce opposition, and over a "black issue," where defendant remove their connection to slave heritage.

9.    Somewhat like a secret society- within Committees, Council, Boards, and Commissions, but acting in joint unison with private or non-profit organizations, those receiving public funds in the open, but, in darkness under color of law **[Ordinance- #2016-16]** with conduct to meet agenda; and, first favoritism to illegal-immigrants by a mural, but an agreement to next' make a mural for Blacks. The problem is, none of the above by legitimate Black-input or valid voice heard, yet lawful voting to deprive protected rights of W-J Black citizens. This, then, corrupt governmental behavior by manipulating government resources and federal funding, as a few White elites join with "conflict of interest" to stage voting. Their primary method of choice (above aforementioned) is at very least a specter of governmental impropriety, unlawful ethical procedures. Racial bias, that to carryout overall plan, with a goal 'first a mural for Hispanics, and trade-off preplanned mural for blacks' is the underlying official misconduct, where defendants White elites, and a few bourgeois blacks, joined, knowing it would be impossible to erect a Hispanic-mural within the W-J, once, or first, a Black-mural in place. To appease Black class W-J citizens, now comes offer to erect 'Black mural' when defendants all along knew the voting process rigged preordained outcome by reason "conflicting" interest. May call for intervention by federal government's investigation of discrimination in public funding, and for a closer look at misappropriation federal grant money for the arts, mural project: drastically changing ethnic make-up does not mean removing slave history or compromising it's heritage, if by dedications of competing murals that lessen ambiance, black pride.

10.    Declaratory judgment, halting further racially motivated acts, and injunctive relief to prevent harm or permanent injury to plaintiff, where he, and his ancestors, suffer deprivation of wrongful "story" about identity (a mural) remove or cover-up heritage. In official authority, defendants give Blacks an ordinance Landmark; yet, in same action misrepresent its core history slavery, by a "conflicting" vote with sole interest benefit illegal-immigrants and gentrification. Is misconduct discriminatory, and against federal guidelines which also determine preservation policy for history of Black landmarks. Required, is to, Declaring Rights, pertaining to ongoing injury and great harm done permanent. Rights, related to defendants in course of dismantling W-J's Black slave-history.

11.    Is well-documented acts of cabal, in continuum, and presently, involve "conflicting interest" by preplanned votes, so to misuse municipal government, and laws, by appointing persons as officials on various City run Boards, Commissions, and Committees, to hide wrongdoings of racial bigotry. Repeated time and time again throughout W-J history, to remove and dislodge black inhabitants from living in their community. Defendants, White elites, whom recently moved into the W-J, have decided the destiny of Blacks living there, and that racial bias now formed a cabal within government decisions, made by misconduct in purpose, has intensified, that agenda. Now covers, and use Hispanic culture, or manipulate another different ethnic group. Include illegal-immigration singled-out for special treatment by reason Sanctuary Jurisdiction the *"preferential treatment"* but for sole reasoning disenfranchisement of Black-citizens the long time inhabitants.

12.    The scheme begins with defendant White-elites enlist a few Black bourgeois 'wealthy' class of whom have own interest patronizing own black enclave. Those of whom consistently "sell-out" or by disingenuous projects, such as a 'Black mural' offered to appease those in opposition of 'Hispanic mural' being in, and out of "contexts" with a historic place slave history. The Black bourgeois, joined with White-elites are truly acting on defendant's behalf, but conduct demonstrates a betterment of W-J community, when, the reality is negative, or without any moral conscience by intention, nor real opposition to Hispanic mural project. The lack of good faith conduct by black-bourgeoisie is the only way White elites can accomplish "conflict of interest" Council, Committee, Board, and Commission voting on "Black issues" *i.e. mural* projects. Knowing their misdeeds, are acts in opposite best interest securing their own "story" heritage, and yet, still do the wrongful harm and injury, by aiding and abetting White elite interlopers. Acting as 'go between[s]' and to do biding, in behalf of, the powerful city authorities White elites, and Arts Council.

13.    None of aforementioned accomplished unless, and together, defendants in cooperation with so called "Black leaders" of bourgeois class, and that leadership under color of law is source of city planners scheme, wrongdoings, including manipulation of ordinance, and laws- #2016-16 which installed W-J as landmark district. However, the acts are done by increments of stealth, sometimes in

violation own city guidelines. For example: a defendant will serve in one official capacity- such as, member on City Council making determinations on 'Black issue' their welfare of best interest, like on what crucial to preserving Black history, and the White-elite vote is determinable, and when implementing city policy, laws, and ordinances [#2016-16]. Then, same defendant a councilman or woman, while under color of law acting not[] in best interest of Black citizens, when he, or she, knowingly have a conflicting interest, while unlawfully take position also as a Commissioner or Committee Member on Arts Selection Committee, have a vote in favor of and on the very "Black-issue" found negative on basis of color and race. In this suit, are defendants to taking steps to remove plaintiff's heritage, deny preservation of history any and all connection to pass slavery, which, a substantive relevancy of 'Black issue' attached to outcome a "double vote" of council member and Arts Selection Committee. This racially bigoted-scheme in due course of defendants their municipal practice, pattern, and policies.

14.     Given a hypothetical scenario, however based on present real situation ordinance, and mural, of "conflicting interest" occurring on regular government decision, but, affecting negative within the W-J black community; is, inexplicable, and irreversible harm done to generations of Black inhabitants, and their children. First comes (not a theory, but reality) a particular Planning Board member might having already designated a section of district, property within W-J, to become "commercial" and that White elite city officer, with prejudice, against Blacks, racially motivated arbitrarily and with forethought capriciousness, decides that he or she by in favor of illegal-immigration that official, will, grant variance to Hispanic restaurant *"preferential treatment"* access of next-door property to house, of belonging to long time Black resident. That Black, is opposed to the city's move, on ground, larger question property "is historic landmark" and parking problem and traffic will undermine nature ambiance of historic slave community, its sacred heritage. For the sake of this "example" the official, also, is a resident of the W-J represent White elite. That official, works for Mayor, he or she additional might be appointed, or elected member of City Council (CC), allowed to voting in favor of Mayor's desire, a wish, for a commercial monetary city venture, enterprise Hispanic restaurant in Black historic district. So that council member, whom also works for Arts Council, the CC votes, grants permission to build. However, the Preservation Commission (PC) has the final say on what (mural) or building stands within W-J Black Landmark. However, the planning board officer is also a member of the Preservation Commission, now with a "conflicting interest" of a double vote, and where the majority council, of whom, mostly White elites, or perhaps a couple Black bourgeois class members, whom already have sold-out their vote. A distinct "conflict of interest." Gone without detection, nor a challenge: but with three exceptions- first, the Black man courage to speak-up at meeting in opposition of mural; second, the overwhelming numbers of Black-

citizens of W-J whom also opposed to Hispanic mural; and, third, your plaintiff, a civil action. Where confronting defendants acts done in secret, and because seemingly all is above board, yet, racial prejudice persist crippling permanent damage to W-J heritage, by through and from city processes. Is unconstitutional a government run by cabal. That Planning Board member, whom, also, CC member; whom also a deciding vote, is also member of the PC, appointed by the Mayor. Thus, an unannounced and kept quieted that government city officers, and officials, in stark conflicts by unethical behavior, when in consideration doing Art Council's bidding. Knowing that cabal a willful misconduct city endorsed, unconstitutional, and racially designed, to remove Black residents from established heritage, a quality of humanity.

15.    That "hypothetical" situation, really happening, cabal's plan, reaches long term commercial enterprise, is glaring, private local entity, architect outfit, conducts modern buildings, houses, wherein as speculators have cooped Black-owned homes and transitioned them into appealing for White gentrification, where they assume position 'black heritage stand in way' of scheme remove blacks, and their heritage. Is solely, for, commercial profit city investment. How it all began 'cabal' is behind this lawsuit, to halt further injury, harm, and irreparable damage to Black heritage, what negative affect upon the W-J. Is inclusive Separation of Power the federal government's authority to halt "preferential treatment" by Sanctuary Jurisdiction for illegal-immigrants, morphed into a mural, and is nation-wide provoked heated discussion to "define rights" for American-citizens and Blacks opposed to such 'special treatment' for one group, against another, and if on basis of race and color.

## PARTIES, JURISDICTION and VENUE

**The Parties:**

16.    ***Plaintiff; at all times relevant herein,*** William Hardy Saunders, Jr., for over four decades well-established Photojournalist, started career- 1959, contributing to local newspaper in Princeton, New Jersey; retired in 1988. A Disabled-American recognized under Social Security Act (Title II, ADA protections); since age of 5 years a recognized artist as painter, born, and raised, in Princeton, presently a permanent citizen of the town. Grandfather- George McGrowan, from Princeton, and served in armed services, WWI; Grandmother- Edith Lane McGrowan, 36 years as employee of [original staff] Educational Testing Service of Princeton> their family home located next door to site "structure" of controversial mural painting; recent discovery, research on ancestry, reveals iconic Black-woman from Princeton, Betsey Stockton, she originally a freed slave, and became historic teacher, also missionary: is more than likely plaintiff having a family relationship to Stockton, records show by linage, wherein, great-grandfather "a Samuel 'Lane' having married niece of Betsey Stockton" and therefore, plaintiff, has a deep heritage-roots with significant direct interest of in, and

and overwhelming for justification bringing this civil action.

*Defendants; at all times relevant herein, are,* Town of Princeton, New Jersey is under Borough form a municipal government, consist of Mayor and Council members: Mayor and Council are elected, with council members act as legislative body, and the mayor makes committee assignments that most appointments are made by the mayor. Mayor also serves as Chief Executive Officer making appointees to boards and commissions, also serve as council members for purposes voting on ordinances (#2016-16), and responsible for Sanctuary Jurisdiction policy; Liz Lampert, is Mayor; Arts Council of Princeton, a non-profit arts organization, under auspices City of Princeton, and as an arm of Mayor, along with Jim Levine, Executive Director, and Maria Evans, Artistic Director; and, Historic Preservation Commission and its Commissioners, Elizabeth H. Kim, Historic Preservation Officer, are under authority federal government, Section- 106 of the National Historic Preservation Act of 1966; and, Princeton Public Arts Selection Committee.

*Defendants; at all times relevant, is,* Witherspoon-Jackson Neighborhood Association, and Shirley Satterfield.

*Defendant; at all times relevant herein,* Leticia Fraga, and as Councilwoman.

*Defendants; at all times relevant, are,* the Wise Preservation Planning, and Seth B. Hinshaw.

*Defendants; at all times relevant, are,* Joint Efforts Safe Streets Program, and John Baily, also as Organizer.

*Defendants; at all times relevant, herein,* Studio Hillier, and Barbara A. Hiller, and Robert Hillier.

*Defendants; at all times relevant, herein,* Advertising Specialty Institute, and Timothy M. Andrews.

*Defendant; at all times relevant, is,* Marion Davia.

**Jurisdiction and Venue:**

17.     This civil action seeks declaratory relief under Declaratory Judgment Act, 28 U.S.C. § 2201, and by reason Court's subject-matter jurisdiction conferred pursuant to Civil Rights Act of 1964, a controversy evolves around violation of 28 U.S.C. § 1331, also, seeking injunctive relief. Because this a suit in damages, and Plaintiff is a citizen State of New Jersey, some of Defendants are citizens of other states, and the controversy seeks damage exceeding $75,000.00; and, is that jurisdiction further specified pursuant to 28 U.S.C. § 1332. Venue is asserted and pursuant to 28 U.S.C. § 1391(b), because substantial part of events giving rise to cause of action taking place and occurred in this district, of Federal Courts of the State of New Jersey.

## FACTURAL ALLEGATIONS

18.                    **I.** At end American Revolution, black community W-J grew as black slaves who fought in that war gained their freedom and made the small enclave a settlement. Beginning in 1807 and property within W-J district, is location of Princeton Cemetery with designated "Colored Section" comprised burial resting-places former slaves and their decedents *[plaintiff's ancestry recorded, in that category]*.

**II.** Palmer Square (1936-39), was then business district Town of Princeton and located next to main thoroughfare Nassau Street, and then, residential area Black enclave home owners. Edgar Palmer (White) wealthy elite, heir to New Jersey Zinc Company fortune, decided to create a new municipal center, carved out of the center Black enclave. The project began (mural) involved removal (heritage) homes of Black class: was to be set-aside part of Palmer's Square new design homes for former Black residents, but, Palmer changed his mind. Palmer, took the homes of Black citizens, placed each on logs, and rolled them down Witherspoon Street, is perpendicular to Nassau, to area now known as the "W-J" in 2016 designated as historic district with protection under National Register as Landmark place direct connection to history of slavery in United States. The Black homes where removed from original district named 'Baker's Alley' is part of Palmer Square, wherein, once upon a time, Black entrepreneurs had thriving commercial businesses, are presently taken over by White elites, for gentrification. White relators, by speculation on selling Black homes.

**III.** Princeton, and specifically W-J district became African-American a noted place, and historic resource in "Negro" slave "runaway network" (whereas, very building property- mural placed, is in "contexts" a dignity, identity, slave holding, signify liberty, within meaning 'Freedoms' of Expression, protected under Constitutional right security of heritage a sacred district, of which, might not be enumerated, or so specified in the Constitutional Amendments, yet, found in the 9th Amendment for protected rights of "property" and "liberty"). Thus, W-J served as a transit point "Underground Railroad" important halfway between Philadelphia and New York.

**IV.**    Betsy Stockton (1798-1863) iconic Black-Woman educator and missionary, born into slavery in Princeton, New Jersey; her owner, Robert Stockton gave her to his daughter upon her marriage to Reverend Ashbel Green, President, College of Princeton (Princeton University). Betsy *{or, "Betsey"}* Stockton, was revered teacher, many years, at "Witherspoon Street School for the Colored" historic structure within the W-J's "story" of slavery. Recent research reveals, "Betsy Stockton's niece married Samuel Lane," records show plaintiff's ancestry, linage of grandparent Edith Lane McGowan of Princeton, might be distant relative of Betsy Stockton.

19.    On 11/19/2015, defendants Seth Hinshaw, and Wise Preservation Planning, were approached by White elites- also defendants herein, city municipality, Mayor, and Council members, hired for to

wherein, once upon a time, Black entrepreneurs had thriving commercial businesses, are presently taken over by White elites, for gentrification. White relators, by speculation on selling Black homes.

III. Princeton, and specifically W-J district became African-American a noted place, and historic resource in "Negro" slave "runaway network" (whereas, very building property- mural placed, is in "contexts" a dignity, identity, slave holding, signify liberty, within meaning 'Freedoms' of Expression, protected under Constitutional right security of heritage a sacred district, of which, might not be enumerated, or so specified in the Constitutional Amendments, yet, found in the 9th Amendment for protected rights of "property" and "liberty"). Thus, W-J served as a transit point "Underground Railroad" important halfway between Philadelphia and New York.

IV. Betsy Stockton (1798-1863) iconic Black-Woman educator and missionary, born into slavery in Princeton, New Jersey; her owner, Robert Stockton gave her to his daughter upon her marriage to Reverend Ashbel Green, President, College of Princeton (Princeton University). Betsy {or, "Betsey"} Stockton, was revered teacher, many years, at "Witherspoon Street School for the Colored" historic structure within the W-J's "story" of slavery. Recent research reveals, "Betsy Stockton's niece married Samuel Lane" and that records show plaintiff, ancestry, linage of grandparent- Edith Lane McGowan, might be, a distant relative of Betsy Stockton.

24.    On about 11/19/2015, defendants Seth Hinshaw, and Wise Preservation Planning, approached and enlisted as, Preservation Specialist, to conduct viability Landmark designation W-J district (Ordinance #2016-16), "Wise" survey on history of district, it's inhabitants *[For purposes of this action "White elites" is a term interchangeable with "Cabal"]*. Seth Hinshaw, joined as part of ongoing White elites secretive plan, to eliminate, de-emphasis historic meaning 'Slave enclave' W-J, by <first> emphasis cultural dedication with Hispanic-mural permanent display that stating Black community inferior or non-relevant history, and imposing to <later-on> a supplimary or insignificant Black heritage dedication.

25.    City defendants, in and around 2016, did act under color of law by hiring Preservation Specialist to, intentionally undermine black heritage, by its so called "Wise Report" did omit all and any reference to W-J's slave history. This then by acting contrary to guidelines set-forth under federal government procedures, Section 106 of the National Historic Preservation Act of 1966 (NHPA), which prevents distortion ethnic history and particular connection to Black slave history.

26.    Defendants joined, conducted Wise report, by purposely failing make mention historic record clarifying valid fact W-J's historic connection to slavery and Underground Railroad. Thus, City defendants as Cabal and Art Council, knew, Wise report, conducted purposely to eliminate relevancy W-J's true Black history.

27.     Defendant's Wise report, in violation constitutional protections for the subjects of the report, Black citizens of W-J, and rather than Wise concentrating on facts true "story" of W-J, was made a bogus report. The intent of city defendants together with Arts Council was to allow, without detection, untruthful or critically inaccurate "story" by eliminating record of Black slavery. Making it possible for defendants ability to carry-out their plan to "first" install Hispanic mural.

28.     Defendants, thereby, with bogus Wise report in exchange for mural going forward, and the deal sealed that granted landmark designation for W-J Black community, defendants desire to avoid protest by Black citizens, caused the "first" phase of their plan complete.

29.     The plan continued on designed course, by putting into force, the White elite defendants held shame public hearing on the "Black issue" of Hispanic mural placed in landmark district. All valid opportunity for Black W-J interest, and concerns, those in opposition, left no effective means to demonstrate against the mural.

30.     The cabal was fully in progress during all phases officials unethical "double voting" from various platforms Committees, and Commissions, with process to obstruct justice and equal civil rights, in order to grant "special privileges" for illegal-immigrants a cultural mural painting, to which defendant's overall scheme meant to enhance commercial exploitation 'gentrification' of historic black slave community.

31.     Therefore, defendants, at all times relevant, has reason to believe their acts or inactions would result of a planned outcome, predicable, by obstruction due course voting by city administrative procedures being abused for personal gain. To undermine black heritage, by causing a clear road or pathway to "first" Hispanic mural placed in once a landmark slave district: Sanctuary Jurisdiction for non-citizens. That mural causing mental anguish by placed next door to plaintiff's grandparents house, a black family home, does demean memory of proud ancestry, threatens and displace what dignified-living remain for Black residents.

32.     On information and belief, defendants, of motive eliminating history of slave settlement, and that history only barrier left confronting their plan; and, whereas, was defendants White elites, joined in agreement, and together with Black bourgeois few of wealthy class, acted to legitimize their vote, thereby removing any speculation working as a Cabal. However, once the token vote granting Ordinance #2016-16 favorable for a Black landmark 'in exchange for vote granting Hispanic mural' to go forth without black opposition. However, White elite-defendants did not anticipate an uproar and by "controversy," was written about in local news-organ.

33.     Defendants moved promptly, to cut-off further public hearings, to deny Black citizens their input, and to quiet those Whites, and Blacks in opposition. However, defendant actions, lead to exposer, as stated: "once again repeated" (is aforementioned above- a gentlemen asserted).

34.    In month of July, 2019, plaintiff uncovered defendants wrongful acts of continuous discriminatory on account of race and color, when came to surface the misuse of federal funding for art project mural to be placed next door to his grandparent's house: a wide-spread city government officers in conjunction Art Council discriminatory dissemination of public funds, using corrupt voting in administrative procedures which affect special treatment for one group, Hispanic inhabitants of the city's Sanctuary Jurisdiction, policy, practice, and by pattern. Such official misconduct aimed at degrading "Black issue" debate over mural. Was brought to light city officials and Art Council, the commercial interest gentrification their intent.

35.    Sanctuary Jurisdiction for imbalance by "preferential treatment" for a single culture Hispanic non-citizens and over another group- long time Black inhabitants of W-J historic landmark district, where known to defendants such acts would change Black "story" of history relevant to Slavery. Defendant's in changing the "story" of W-J's proper and correct slave history relevant to all structures or buildings within that district, essentially and most important the mural placed on a wall once a central location indicting 'Underground Railroad' hollowed ground: place:

**V.**    To quote William Faulkner, a son of the American South, "The past is never dead. It's not even past." Here, today, Black people of the W-J desired not to hold on to the past, but rather, understand the past is never dead, and not to permit those White elites interlopers forget past "story" of slavery in America. New Jersey had strong Southern sympathies, voted against or imposed the Emancipation Proclamation of 1863 freeing slaves; was not until 1865 the state abolish slavery. The White revisionist of history, are much like the White elites W-J Blacks face today, and that mural is a keen symbol of why our Constitution required, and needed, to protect Black heritage, intact, and without alteration of its story. History repeats itself, in different forms. Whites describe the Quaker community, its story, as highest example morality by abolitionist of slavery, however, in fact, the real "story" is that, free blacks escaping from slavery, and applying for membership in a secure, said safe environment, the Religious Society of Friends (Quaker Church) those black slaves routinely denied that protection. The truth in history of Black-slavery seldom is preserved the details, are to reality. Same as Hispanic mural placed in historic slave district W-J deprives Black residents freedom of speech, free from White elite revisionist changing real truth of those once enslaved. Faulkner is correct, and this plaintiff's civil action has urgent meaning, and as for a truth presently being dishonored by unlawful, and unconstitutional change, in the accuracy, or to unaltered, or to preserve a positive "story" by constitutional right forever more descendants of slaves. The children have a "story" that gives them inspiration proud in dignity of heritage.

36.    Defendants, those official misconducts for a Hispanic-mural and carried-out clothed under Sanctuary Jurisdiction policy, known by them in violation federal law Separation of Powers.

37.     Back to year 2016, "Wise report" conducted in agreement White elites, Hispanic city official, Arts Council, Shirley Satterfield, Marion Davia, the Hilliers, Timothy Andrews, Elizabeth Kim. Maria Evans, John Bailey, to name a few, and others yet to be determined identified, gathered, on intention to eliminate history of slaves having to do with W-J history, and for reason removing any and all indication proper heritage, of which, would stand in way Hispanic dedication of mural. Wise Preservation Planning, Seth Hinshaw, did join city defendants, and knowingly under strict obligation duty to constitutionally protect equal civil rights by accurate preservation slave heritage.

38.     That defendants, alleged above herein, acting in contradiction to official duty, and indifference to obligations by reason> Section 106 of NHPA; chose to ignore federal guidelines and procedures, which dictate- *"mandate to follow review process for federally funded projects {mural} that will impact sites...on the National Register of Historic Places."* (e.g. W-J, Slave Settlement).

39.     A Section 106 review process under NHPA, "specifically requires, to take into account the effect *{mural project 'special treatment' for Hispanics or non-citizens}* of an art project may have on historic properties" includes- historic slave property, as a liberty, free history speech for Blacks:

> *"The purpose and language of Section 106 this legislation makes historic preservation field relevant considering community..., first recognizes importance of "historic heritage" in development of the Nation and that such "foundations" of Nation should be preserved as a "living part of our community life, to provide a sense of "orientation" it further acknowledges "irreplaceable heritage." The finite lifespan and limited supply of these "historic properties" provide grounds for preservation program, such "vital legacy of cultural," will be maintained and enriched for future generations of Americans."*

40.     Defendants, came to agreement, a meeting of minds, an understanding to carry-out agenda use public funds for art project Hispanic mural, and to be supported by funds from commercial businesses of private concerns that desire to exploit W-J property as wealth benefit. Defendant Art Council enlisted Timothy Andrews, (White) elite former Board Member and Trustee of Princeton Arts Council, and then President and CEO of Advertising Specialty Institute, an education, marking, and media organization, in the $21.5 billion industry.

41.     At same point time prior to City Council vote on Ordinance #2016-16 Black landmark, the Cabal came together, Andrews; and, the Hilliers, also, (White) elites, owners of architectural firm the Studio Hillier. Wherefore ever relevant are also referred to as 'City defendants' whether in cooperation or acting alone, are joined as defendants acting together or independently.

42.     Is on information and belief, prior to W-J voted as historic Black district, the Cabal agreed defendant Marion Davia (Hispanic/Latino), would paint a mural, and to be placed centrally located in W-J historic district, as pre-planned outcome, in advance, or in 2016 knowing mural a done deal.

43.    The "agreement" Hispanic-mural was made and decided on prior to official City vote of year 2019, of which would determine a mural dedicated to Hispanic culture. The subsequent voting was merely a formally shame.

44.    For years, Black bourgeois wealthy class had been systematically joining and doing the biding for White elites, or stealing from 'own' Black people, and by misrepresenting best interest of 'Black folks' to what, instead, benefit themselves. Cultural programs designed to fool those Blacks into believing their welfare was being protected of heritage, when, all along doing opposite by on be half White interlopers new arrivals to W-J, gentrification. White elite defendants showing gratitude to Black-bourgeois by, in return, another cycle[] of personal reward public funding from Art Council misappropriation federal grant money for arts programs.

45.    Thus, enhance self, private organization, and programs, by misusing public funding as personal benefit; Satterfield, Bailey, and Evans, also with others in cooperation, and as head of Black Neighborhood Association. The routine, part thereof, like taking advantage of and upon death of a Black person's family generational history of memorabilia. Those living within W-J neighborhood, for example, historic photos: Satterfield, in 1960's had access/trust to confiscate plaintiff's grandmother, her family photo album, showing images of historic significance *i.e.,* grandma one of first Black-American free citizens that residing in Princeton.

46.    Those family items also having monetary value but irreplaceable. Satterfield would store such in her home, for showcase her history credentials, and give such historic 'Black' items over to City Historical Society: favorable impression, receiving prestige, and from White elites defendants.

47.    Not unlike Shirley Satterfield, or defendant said "Black leader," is John Bailey, in truth, he in order to maintain status with youth social and cultural programs for Blacks, yet misleading, that to cover Art Council, they in combination misuse federal grant funding. They, joined, in conjunction, the Cabal's interest to promote bogus Council members "double voting" process unconstitutional, as procedural hurdle to allow Hispanic mural art project go forward without protest.

48.    Defendants, regularly "double voting" as Council members, when on platform of another Committee, and also as in same-time member of a different Commission. Knowingly, such votes are divergent of "conflicting" interest.

49.    Arts Council pervasive corruption intended for exploitation of W-J Blacks' is through twisting government process for predicable outcome mural project this in-spite of Black citizens display wide community opposition, and while misleading Blacks of their best interest. Is manipulation public funds meant for educational programs in the arts whereby in cooperation with private organizations. However, Satterfield, and Bailey, repeatedly over course many years with Art Council an independent organization close connections to, and on behalf of the City defendants.

The misguiding, and misrepresenting intent, the federal grants such as awards under authority National Endowment of the Arts (NEA); they making multitude of joint-applications, of which, Hispanic-mural conducted by abuse of "501(c)(3)" benefits, the defendants agenda continuing art projects for personal gain.

50.    Defendants, acts, and inaction, or by deceit, and to receive compensations for a deal or agreement, meant, to "first" exchange for mural implementation, by each in effort pretending to holding back opposition to a Hispanic-mural but conduct fully demonstrates the plan was "first" install Hispanic-mural by "double-voting" favorable to guarantee "first" Hispanic mural dedication in October of 2019, and then, later on come Black dedication in separate festivities: rather then in sum and rightfully a single celebration and dedication of a mural representing historic nature relevant to W-J's landmark connection to Slavery a place Underground Railroad, and on National Register for that reason, or other than and instead of a place Hispanic culture the new arrivals.

51.    As alleged above herein, defendant municipality regularly under color of law, gave city assignment on various Commissions and Committees, sole purpose was to solidify bogus voting on issues such as going forward with Hispanic-mural in a way undermine all Black opposition to that art project. Wherein, Satterfield and Cabal gets ordinance approved when by original scheme, the Ordinance #2016-16, along with next part of plan working in unison is to discourage the fierce opposition to a Hispanic mural, and by doing so, together with Arts Council realizing it's desires -- White elites back door deal already in progress: final phase of overall scheme, that a Black-mural be announced, and conducted "later on" the following year after Hispanic-mural erected.

52.    However, in month of September 2019, secrete plan for Hispanic-mural pre-scheduled on scheme that began in year 2016, did back-fire when defendants, did not predict, the overwhelming opposition causing heated "controversy" arose of "Black-issue" fundamental right to free expression, and of against implementation of a Hispanic-mural done disrespecting a place intended security of Black heritage landmark district.

53.    In year 2016, W-J Black residents were concerned with **"urban insertion"** *[See also: Id. at p.9; Item- paragraph #21 "Defendants" herein]* their homes being speculated upon by (White-elites) the realtors, 'inserting' costly modern houses to replace historic buildings, and thereby deluding heritage, Black history. Black residences decided to designated W-J as a historic enclave, assuming that such status would halt further housing speculation, and thereby preserve historic character and sacred ambiance-special slave history of the district. However, city hired Wise Preservation Company, Seth Hinshaw, purposed to undermine Black history slave background of historic people inhabitants of the W-J explicit connection to slavery and Underground Railroad; now sits a Hispanic mural- no connection, whatsoever, black heritage; race segregation United States.

54.     The 'Wise Report' concurred a Landmark district, and should be preserved intact, however, city instructed Wise, Seth Hinshaw, 'not to make mention' by fact based history 'slave' reporting distinct part of W-J history- it's unique historic foundation of origin a "story" intertwined with plight of slaves, and needed to work in stone quarry (Quarry Street) that to literally build Princeton University, is stone by stone.

55.     White elites, are City, Wise, and Art Council, and together intentionally misrepresented its report, made to prevent Black inhabitants their true story slavery from having effect controlling grant or denial Hispanic mural, where full weight of 'Slave' history connection brought to light in a Wise report would prevent that mural from going forward. Would forbid any alteration changes or even thought of a mural, that within a Black landmark district. In essence, a proper Report would concur that a mural purposes Hispanic culture, or Black culture, is demeaning on any structure located on property landmark district that secure-history of Black heritage.

56.     Municipality, and Art Council, insisted on Wise misconduct, for racial animus discriminatory reporting by excluding all reference to slave history, so that the study meet their designs for bogus or 'watered down' black history *i.e.,* missing mention of slavery.

57.     Once the Wise report finished in a manner elimination history of slaves connected to W-J, and did allow defendants continue on course Cabal's preplanned imitative Hispanic-mural go forward "first" and to completion, and within a years time following a Black dedication celebrating W-J history. With that phase done, the defendant's believed, predicted, and desired, that Black protest over Hispanic mural would become nullified and voided a constitutionally right of protected property, and liberty, derived of run-away slave "story" origins annex to the W-J's history

57.     The Wise report not only avoided aspects of Slave history referred to in that Report, there was not a single indication W-J historic nature place rooted in history freed slaves source of labor in Princeton- historic Black slave enclave. Nor of reporting underlying central fact important and conclusive to any report being valid, is the foundation of 'Black heritage' being unique and special in a place called W-J; and, that such special status landmark district qualifies for government protection to be insulated from any and all alterations, such a painted mural on wall of a building. Is pursuant to Section- 106, forbid mural[S] at sacred place, particular once slave "structures" so W-J.

58.     At the time 2016, and prior to Council members voting on Ordinance- #2016-16 made W-J a confirmed landmark on National Register. Cabal group agreed on plans for Hispanics' non-citizens allowed *"preferential treatment"* under municipality policy for Sanctuary Jurisdiction, that undertaking by official misconduct voting by City Council. Accomplished in part, by; **Leticia Fraga, acts under color of law a Councilwoman, same time member Arts Selection Committee, a "double voting" but two separate of different platform known to her conflicting interest.**

59.     Furthermore, Cabal enlisted Shirley Satterfield (whom alleging to represent best of Black interest) bourgeois-class wealthy, Black, head of Neighborhood Association, and yet at same moment a voting member of Historic Preservation Commission, did join Fraga; Hispanic/Latino, and Marion Davia; Hispanic/Latino, whom painter of the mural, having decisive votes, and only intent came out of plan instituted in year 2016, and carried-out in year 2019, votes to enforce "first" a Hispanic mural upon Black folks of the W-J, and later on for a black history dedication.

60.     The defendants, their plan, made years in advance by predicted outcome corrupted influence administrative due course justice for Black citizens of the W-J, was to misrepresent lawful governmental process. To do so, by unscrupulous procedures, defendant's strategy to exchange *"preferential treatment"* for Hispanics, in exchange for favorable voting on granting Ordinance 2016-16' making W-J Black-historic landmark district.

61.     With voting on Ordinance- 2016-16 complete, the next phase of plan, the Cabal required financial support for Hispanic-mural art project, and for the overall scheme to continue, they joined entrepreneurs, the defendants- Timothy Andrews, of advertising commercial interest; and, Barbara and Robert Hillier, of commercial []interest as realtors the housing speculators; also, having overwhelming of personal benefit to all parties involved, including the Mayor, is by exploiting Black W-J properties, changing character of W-J to wholly Hispanic interests, their outlook of gentrification for W-J to be changed (mural) meant to reap monetary gain. But, at lost to Black neighborhood esteem, and causing mental anguish for Black community as a whole, demeaning it's historic character of atmosphere a mural painting> just the beginning of what to come.

62.     Defendants calculated downgrading of Black heritage, a humanity, or "purity" of heritage, what directly connected to Slave history. A Hispanic-mural meant decline Black established and historic cultural recognition, alteration of place almost life-style holly atmosphere a distinctiveness derived of generations blacks, descendants, of slaves, and a very proud to be American settlement. Whereas, Hispanic newcomers, like those before them, will transition leaving Princeton and in search of better life than low wages for labor. Hispanic cultural, also, has a tendency "balkanization" very insulated, is stark difference from traditional Black cultural W-J.

64.     A mural that celebrates Hispanic culture non-citizens illegal immigrants, in a district Black culture, is at least oxymoron, and at most counter to every benefit We' Black Americans, as a people of W-J share equity, and fairness, is plaintiff's family history growth within W-J, now being disassembled, along with a magnificent history of heritage being incrementally destroyed.

65.     In W-J's Black history, is culmination ideals of America, worthy to be preserved. A "story" be without distortion by "special treatment" another different culture. Normal business of democracy relies on property right, of a heritage: Hispanic heritage >does not< derive from this a United States

or W-J history of settlement. And yet, America affords equal benefit to all citizens, the equity, and especially new comers, but no exceptions of equal civil rights such as glaring Sanctuary Jurisdiction allowing a mural-Hispanic in location historic landmark Black district. Once again, Black history the heritage soiled, and by a few White elites gone rouge. However, extent of benefits does not mean nor portend extraordinary "benefits" going to one group over another [specifically non-citizens or illegal immigrants] and on account the other group traditionally disadvantaged, Black Americans.

66.     Corner stone of equal civil rights is fair process, Black citizens of W-J, like the gentleman Black, said, herein above, is "repeatedly" defendants White elites obstruction purposed on race and color, by reason manufactured voting. Means, when defendant's policies Sanctuary Jurisdiction give special treatment to one group, that city sovereignty directly challenge federal Separation of Powers, protection of Black heritage.

67.     Sanctuary Jurisdiction, currently do irreparable harm, and long time injury, strike panic in supreme law of the land American citizens, and Black class least of those fortunate enough to protect property and liberty rights within those jurisdictions.

68.     Legitimate benefits found of in any place secured of humanity for heritage, by being on National Register, does not give others a gift to teardown or takeover a property right bestowed of heritage, and regardless good intent purposed "content" Hispanic culture, an individual's race or ethnicity is at stake the identity. Simply put, the Constitution of the United States command "a right to be let alone" freedom of expression Blackness at core equal civil rights or free interference by a mural having no relevance to one's history.

69.     No changes, is no murals, nor White, Hispanic, or Black. The reach of a specific or unique class of American people a black-community with historic values, go much further than mere call for proudness in preserving slave history. That "story" is fundamental to America's trust, justice. For, when concerns city governmental ethical procedures, arise once again "repeated" is our nation's integrity brought into question. Slavery, is guarded history, also of distinction, and inherently a 'kind of black waiver' to defacing by Hispanic mural, or any murals even if the purpose morally right "Black issue" dedication to that culture: such mural would also be misplaced. W-J is no[] murals.

70.     Although, "no murals" may not be found protected rights in our Constitution, or right to heritage can't be found, however so, as long as Blacks are Americans we' are morally obligated to keep "story" alive, correct, without alteration by even if insignificant a mural, or even a 'Black mural' cause ill-gotten change. A few blocks from the W-J is Princeton Battlefield, a National historic place, no murals, none allowed, not even if it honored White patriots. Is or should be 'no murals permitted' even if honoring Black slaves whom gave-up their lives in performance freedom for others. Is for generations to come.

71.   In Month, of July, 2019, plaintiff wrote a ten-page opposition letter to "Hispanic mural" sent to Elizabeth Kim, defendant, a Princeton Historic Preservation Officer (HPO). The letter indication plaintiff's ancestry may be connected to iconic Princeton W-J Black-woman Betsy Stockton, a historic teacher, and that the then proposed mural to be placed near almost next door to plaintiff's grandparents house. The letter continued, and made inquiry into next public form wherein Black citizens in opposition and desiring to make grievance on the record, could be heard. Kim, HPO, in a subsequent phone conversation, indicated another "public hearing would be held shortly" and accordingly notice given by co-defendant Art Council.

72.   Defendants, Art Council, and HPO, instead of informing next meeting a public form for free speech those in opposition of the Hispanic mural, the defendants held a closed meeting, and vote, agreeing to go ahead with the art project; and, thereby rejecting free speech further public hearing on a "Black issue" affecting majority whom against a mural depriving right to security black heritage.

73.   On or about, or in and around month of September, defendant's announced the art project would go forward and that the Hispanic "would be completed in November of 2019 in time to celebrate Hispanic culture month." Plaintiff, took civil action by filing a lawsuit in federal district court, District of New Jersey, seeking Declaratory Judgment among additional relief, and to halt further the undertaking painting a mural. Rather than court issuing an order to determine the rights of parties, the complaint was ordered to be amended, thus, allowing the defendants to complete "first" phase a mural for Hispanic non-citizens the *"preferential treatment"* for illegal-immigrants.

74.   On October 16th, 2019, John Bailey co-defendant, announces a plan "African American Heritage Mural" an art project at a place nearby Hispanic-mural to be completed in year 2020.

75.   The John Bailey, he defendant knowingly taking part, pre-planned conduct with unethical intent to preserve with White elite defendants, continuous corrupt public funding for bogus art projects, and self benefit. For a "second" mural, is part of the original scheme initiated in 2016, for the outcome 2019 Hispanic mural conducted under special treatment Sanctuary Jurisdiction policy, practice, and pattern, same as "repeated city wrongs" racial animus, is the gentleman's statement- in opposition that infamous bogus-meeting held by biased White elites.

76.   Wherefore, Cabal's original design, pre-determined that, of a "first" phase Hispanic-mural done, to be followed by or later on a "second" phase a Black mural: the "first" phase required under color of law "double voting" by obstruction of justice the manipulation of Council member votes, and racially discriminatory due course city administrative processes.

## VI.   CAUSES OF ACTION

77.   **Wherefore,** Plaintiff prays for, by reason a Disabled-American within meaning Social Security Act, he is litigant, and secured of benefit entitled reasonable accommodation, respectfully, for Court appointed *pro bono* attorney. Also, seeking Declaratory Judgment to define rights of parties, Municipality, Arts Council, City Officers, Officials, private concerns, commercial entities, and non-profit organization, or such other individuals, or officers, and those yet to be named or identified so acting in whole, or in part, official capacity, or as individuals, or under color of law, each of them to be liable for compensatory and punitive damages; and, for such other and further relief as the Court may deem just and proper. Causes of Actions, as follows:

78.   **This action is brought on seeking additional to Declaratory Relief, is request to enjoin defendants from further irreparable harm and permanent injury, if by defining rights of parties; is a suit for damages Compensatory and Punitive, pursuant to, 42 U.S.C. § 1981a(a)(b); by reason intentional discrimination in violation of 1964 Civil Rights Act; Section- § 1983 of United States Code, the Deprivation of Rights being usurped by undermining 8 U.S.C. § 1373 which prevents a local Municipality, on account of race and color, the discriminatory Sanctuary Jurisdiction providing "preferential treatment" for illegal-immigrants or non-citizens and when through public funding for the arts, federal grants, of under authority National Endowment for the Arts (NEA), contravening those guidelines; or, in violation Section- 106 of National Historic Preservation Act (NHPA) of 1966; involve 42 U.S.C. § 1982 for guarantee Property Right as a Heritage secured for plaintiff Black-American citizen, and as a Liberty Right, conferred by First Amendment to United States Constitution, protection against racially biased interference Freedom of Expression, right to be heard and Right to be Let Alone" or free to decide own destiny, and if by moral conscience opposition to "*special treatment*" a Hispanic-mural art project, when, in conjunction federalism: Sanctuary Jurisdiction conflicts of interest related to Separation of Powers, wherever involve, 1st, 5th, 9th, and 14th Amendments to United States Constitution; and, accordingly Sections- §§ 42 of United States Code, 1985, and 1986, conspiracy to interfere with civil rights, and neglect to prevent.**

### FIRST CAUSE OF ACTION

79.   **Plaintiff, alleges herein, and above, violations of 42 United States Code (U.S.C.), Sections- §§§, 1981, 1982, and 1983, discrimination on account of race and color to deprive full extent of and "purity" of heritage in a place landmark status on National Register, as property right recognized under Constitution, may be un-enumerated within 9th Amendment protection for a constitutional right; and, so to therefore incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 78, above:**

80.   Defendant's acts on behalf of and in cooperation with Municipality bogus voting by policy, pattern, and practice, regularly designed for avoid detection failure of duty to prevent, but knowingly constitute "preferential treatment" instituted as regular business, and insulate Sanctuary Jurisdiction from discovery of in violation Separation of Powers the federal government's constriction on [when

enforced] do prevent and deter local government from promotion and result of a, 42 United States Code (U.S.C.), Sections- §§§, 1981, 1982, and 1983, violation Constitutional rights by defendant's actions knowingly cause sovereignty imbalance between State and federal government.

81.    Defendants, deny plaintiff's constitutionally protected right as property, the identity secured of heritage to be preserved, to be excluded from defendant's discriminatory racial bias, accordingly, their violations of 42 United States Code (U.S.C.), Sections- §§§, 1981, 1982, and 1983. Is when, defendant by under of law impermissible "conflicts of interest" official misconducts, include, continuing unlawful policies for art projects the Municipality, Princeton, New Jersey, and Arts Council of Princeton, malicious interference dignity of heritage. Obstruction due administration of government in a way City Ordinance #2016-15, conducted with discriminatory tactics on account of plaintiff's race, color, and status of heritage, to deny the liberty "right to be let alone" ordinarily guaranteed under First Amendment protections to United States Constitution.

82.    Defendants, constant disrespect of, and a Hispanic art project known to them and intended to demean a Black community's memory of Plaintiff's grandparents, cause him constant harm and permanent injury. That George and Edith Lane McGowan, share in common Plaintiff a grandson, their only true gift, is heritage and stem from Witherspoon-Jackson "the W-J's" inescapable historic ancestral house is property a landmark family home. Whereas, Municipality has now placed next door to family home an Hispanic-mural painting, and in so doing by callous intent a discriminatory on account of race and color of plaintiff, sole reason being to dislodge his property right security of heritage, is by defendant violation equal civil rights, to what conferred 42 United States Code (U.S.C.), Sections- §§§, 1981, 1982, and 1983.

83.    At all time relevant, defendants White elites intentionally cause irreparable harm and permanent injury, understanding that a Hispanic-mural placed and dedicated to non-citizens illegal aliens, is of no cultural integrity such placement in a landmark Black-historic district of on National Register. Further, defendants fully aware, the landmark designation derive, and because, a direct connection to once a historic black Slave settlement, is point of safe passage in pathway set-up for run-a-way slaves, those seeking security- from 'Underground Railroad' and, defendant's actions irreprehensible by animus, to foster corrupt notions carried-out a Hispanic mural, ill-legitimate in a place, which preserved sacred within spear of Slavery, Black history in America; and, that of official misconduct, in violation 42 U.S.C. §§§, 1981, 1982, and 1983 plaintiff's equal civil rights.

84.    Defendants, by in year 2016 preplanning for 2019 to station a Hispanic mural negative to concerns of Black-Americans everywhere and whom have slave ancestry similar concerns instilled of reverence for landmark slave-district, defendants knew would create and did a storm of opposition and great controversy, affecting national uproar from interest in "Black issue" racially inspired mural

pitting one group illegal-immigrants against another; Black-citizens in historic setting, whereas, defendants White-elite bring Hispanic mural, defendants care less about inequity in plaintiff's property right to "purity" of heritage, and is being violated. 42 U.S.C. §§§, 1981, 1982, and 1983.

85.    Defendants continuing unrelenting failure to official duty, what actions undermine equal civil rights the fair and unbiased governmental process a plaintiff-Black expect and depend on. Is by defendants White elites displaying a Hispanic mural in historic Black landmark neighborhood. Wherein, defendants, under color of law voting, a contradiction to plaintiff's constitutional right to have City Municipality be without racial prejudice, show no specter of impropriety by racially biased or tainted voting on proposals. In violation of National Endowment for the Arts (NEA), contravening those guidelines; also, in violation Section- 106 of National Historic Preservation Act (NHPA) of 1966; 42 U.S.C. §§§, 1981, 1982, and 1983.

86.    Whereby, defendants named herein, along with City Council membership, will serve in one capacity, then another, or several independent government functions while unauthorized "double voting" to disinvest Black interests opposing Hispanic mural. White elite on at least two different Committees and Commissions, such as Art Selection Committee, and Historic Preservation Commission, have double vote racially inspired to do injustice like enforcing mural. Then, same defendants serve in another capacity or title, on another of "conflicting interests" local government position: thus, "double vote" by granting "extraordinary favorable treatment" intended special consideration with means discriminatory against plaintiff, and his class, by giving permission Hispanic mural, know a manipulation from a Municipality engineered or manufactured voting to deprive plaintiff equal civil rights; a violation of National Endowment for the Arts (NEA) guidelines; also, in violation Section- 106 of National Historic Preservation Act (NHPA) of 1966; 42 U.S.C. §§§, 1981, 1982, and 1983.

87.    Defendants, a long time routine from their creed of spreading around by misappropriation of federal grant awards, as when by an unrelenting arrogance White elites proposed, and untaken public art projects tailored- such as Hispanic-mural and forthcoming in year 2020 Black art or mural project, tailored to suit their personal pocket. And, when involve, federal grant awards for the arts, that their official misconduct coupled with to benefit private enterprise and commercial interests of gentrification, using National Endowment for the Arts (NEA) while violating guidelines; also, in violation Section- 106 of National Historic Preservation Act (NHPA) of 1966; 42 U.S.C. §§§, 1981, 1982, and 1983.

88.    Defendants, at all times relevant fully aware, known to them, their actions injure, harm, damage plaintiff, and designed to encumber, disrespect, disadvantage, humiliate, and eliminate "purity" of plaintiff's heritage associated with every structure or building within historic place, is the

Witherspoon-Jackson (W-J). Thereby, defendants, and Arts Council of Princeton, New Jersey acts of discriminatory by reason Hispanic-mural interfere with "contexts" the sacred ambiance of Black slave enclave, do cause heightened shame and continue cause plaintiff great embarrassment, an emotional distress, to consciousness, that being prayed-upon the self-esteem inner turmoil, never felt before or prior to advent mural. This is permanent damage to sense of security ancestral foundation otherwise assured had not defendant's interference, heritage. 42 U.S.C. §§§, 1981, 1982, and 1983.

89.     Defendants, Municipality, Art Council's employees, officers, and officials, include White elites are Jim Levine, and Maria Evans, enforce plaintiff to view existence of an art project contrary to racial equity as fairness afforded equal civil rights, when they give special treatment encountered in form of a Hispanic-mural that does not belong in historic "Negro" landmark place W-J district.

90.     White elites defendant have not background which would lead them to take serious their actions of disconnecting plaintiff-Black from meaning a necessity of Black history, they simply do not care, while at same time, fully understand the implications of discriminatory action altering events in chain of what central part of "story" Black-slaves lives sacrificed so their[]story could be handed-down generations of black children. Defendants, White, wealthy class, realize the value of Black-heritage never-the-less install what mural derogatory to plaintiff's cultural heritage. Preventing what it take, or needed, to preserve that history. 42 U.S.C. §§§, 1981, 1982, and 1983.

91.     Defendants wrongful acts, rather than assist history, halt preservation "story," of plaintiff's ancestors, and with forethought from racial animus, conduct in violation of 42 U.S.C. §§§, 1981, 1982, and 1983, is defendants, the City Municipality, Mayor, City Council Members, and Art Council of Princeton, Jim Levine, Maria Evans, Historic Preservation Commission, Elizabeth Kim, and Art Selection Committee, do intentionally enforce upon plaintiff a discriminatory with affect to disrespect Black ancestry, by placing a Hispanic-mural next door to plaintiff's grandparents ancestral dwelling. An art project, arise through obstruction city voting procedures by "double voting" riddled with conflicts of interest for predictable outcomes, unconstitutional, wherever to deter historic value the humanity within landmark Black-slave settlement.

92.     At all times known to defendants, such mural in landmark Black district, is presently, along with proposed 'Black' mural to come in year 2020, both have a distinction of contradictions by oxymoron designation in a place clinical of "Black landmark" on National Register. Defendants aware equity of civil rights call for exclusion of, any, and all, even 'Black-murals' in a setting of sacred Slave grounds. Still, defendants horrific disregard, by violating proscriptions of 42 U.S.C. §§§, 1981, 1982, and 1983.

93.     Defendants, having been placed on notice, historic Black-district crucial to plaintiff's family-tree "contexts" of heritage is valid "story" otherwise secured a special proud history, include, dating

back to, America's foundations, built on slave labor, and yet, defendants, deride and disparage protection property right heritage for plaintiff's freedom of expression. Irreparable, the damage to self-identity as a form of free speech protected under 1st. Amendment; and, involve, warranty of 14th Amendment, to United States Constitution.

## SECOND CAUSE OF ACTION

94.     **Plaintiff, re-alleges 1 through 87 above and herein, cause of action under First Amendment to United States Constitution, "...free exercise thereof; or abridging freedom of speech..., and to petition the Government for redress of grievances..." takes into account equal civil rights violation Freedom of Expression, destruction of cultural heritage as a human rights issue related to being a Black-American and identity. Wherefore, "government must have a compelling interest" to restrict expression of culture through heritage; 1st, 5th, 9th, and 14th Amendments, also relevant, unremunerated rights provided in 9th Amendment guarantee for heritage as property right; and, so to, therefore, incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 87, above:**

95.     Defendants, deny plaintiff equal protection of the law, by a sacrifice of core American value, cultural heritage is plaintiff's freedom of expression being destroyed of what "purity" goes to clarifying "story" of personal beliefs, thoughts, and humanity of destiny of own heritage. Thus, defendants with stealth do enforce Hispanic mural that place restrictions on plaintiff's freedom of expression, affect each of us, and is every individual's constitutional right to enjoy security of inheritance, legacy, custom, and culture, the acts in violation of 1st, 5th, 9th, and 14th Amendments to United States Constitution.

96.     Defendants intentionally ignore equal civil rights instilled within tenets behind principle of due process for freedom of speech directly related to Municipality and Council members enforcing art projects that demand restrictions on a right to be heard in opposition, or deciding Hispanic mural and to what art Black-citizens must accept, or be confined to destruction of those freedoms. White elites deliberately carefully strip away at Black heritage expression of cultural, is by insisting on immoral exchange of their cultural promise, to be replaced by a Hispanic mural; official action in violation 1st, 5th, 9th, and 14th Amendments to United States Constitution.

97.     Defendants deprive freedom of speech that oppose mural, when by giving bogus notice, holding sham public hearing, did cause wall of governmental indifference to free speech, and by doing making it impossible for plaintiff avenue protest destruction of expression, and as person the inability to be unto his-self and regardless of race, ethnicity, or color, Denied all valid opportunity to

voice plaintiff's opinion, when defendant White elites restrict speech, with intent to rub plaintiff of his own identity in direct relationship with cherished traditions, in a democracy.

98.    At all time relevant, defendant understood, even though not enumerated within our Constitution, issue of 9th Amendment property right to security cultural heritage, being interfered with a freedom of expression under constant strain from, defendants White elites, under of law art project, cause plaintiff dire consequences of emotional distress those acts connected to his ancestry, and stem directly from defendants obstructions by deprivation due process, and free speech.

99.    Defendants engaged in what they allege free speech art work in dedication to Hispanic cultural, a mural painting, however, has the effect to nullify plaintiff's freedom of expression heritage, when, they, by malicious acts abuse of power while under cover administration of laws, and to bring about mural. Wherein, White elites promote a Hispanic mural as symbol free expression, yet, known to them actually stands as a barrier between plaintiff's faith in First Amendment freedoms for humanity-protections against defendant's defiling free exercise expression, and destiny of "contexts" his ancestral "story" to what bestowed; and, since inception first gift of life going back to beginnings of family generations, is what basic every individual expect warranty free speech, for violation of 1st, 5th, 9th, and 14th Amendments to United States Constitution.

100.    Defendants, Municipality, Mayor, City Council Members, and Art Council of Princeton, Jim Levine, Maria Evans, Historic Preservation Commission, Elizabeth Kim, and Art Selection Committee, purposed misuse of local government records, and reporting, intentioned an insult to Black people, as First Amendment protection "story" of Slavery, suffering, and displacement, same as mural-painting now displace plaintiff's property right heritage. Is directly connected to defendants failure to protect a valid government avenue to freedom of speech, is for plaintiff's opposition to mural; a violation his 1st, 5th, 9th, and 14th Amendments to United States Constitution.

101.    At all times relevant, facts, which relevant part of this record state, and confirmed, grandparents of Plaintiff their ancestral historic house, property, enormous of incalculable historic value over generations, now come White elites, demanding the expression of home as heritage be exchanged for a Hispanic-mural with no historic anchor by citizenship nor by illegal immigration. Defendants, thereby, act with dire emotional consequences for plaintiff's protection of free expression guaranteed under our Constitution. Is same free expression, although diseased, grandparents the memory of them, is significance to plaintiff and entire Black community that no further injury or harm done by a mural defendant's alteration to historic property, and heritage right, is by defendant White elites in continuum violation of 8 U.S.C. § 1373; 42 United States Code (U.S.C.), Sections- §§§, 1981, 1982, and 1983; NEA guidelines; and, Section- 106 of NHPA, derived initially from infraction of 1st Amendment protection of property, the Black heritage.

102.     Wherein in so far the defendants knowing corrupt actions administration Municipal voting to deprive plaintiff free expression, and rub legacy of grandparents- George and Edith Lane McGowan, their dwelling, a place and character of strong ambiance and character, and has gone unaltered over course generations family ties through linage, are presently and not seen going into the future that defendants White elites will halt disregarding 1st Amendment protections for property of grandparents, as long as Hispanic-mural allowed a place next door to family house and with sole intent, purposed to remove legacy of plaintiff's grandparents their heritage; is by a continuum violation of 8 U.S.C. § 1373; 42 United States Code (U.S.C.), Sections- §§§, 1981, 1982, and 1983; NEA guidelines; and, Section- 106 of NHPA, and contrary to 1st Amendment protected rights.

103.     Defendants, White elites, offer to, at some future point in time, install a 'Black mural' to which they know, and knew, is part of a greater scheme to appease plaintiff, but, in reality they fully aware the entire district is of historic ground a place centered within "story" of slavery, made landmark Black-historic designation meant not[] to share another's culture as primary so indicated Hispanic-mural contradicts an understanding of history from 'black' slave-trilogy, is a unique heritage in America's history, and as fight for freedoms come under 1st Amendment guarantee.

104.     Defendants, with intent, ignore integrity black history as the "story" fundamental to and foundation of identity, also, for all black-people in this country, to express themselves that without being encumbered by defendants White elites whom have no interest in preserving that free expression, rather, presently, racial discrimination to dislodge sanctity of plaintiff's family history, when a Hispanic-mural thus far, has 'broken chain of heritage' and altered essence of liberty to come and go unrestrained of free will or interruption free expression. A Hispanic-mural by malicious discriminatory placement on account of plaintiff's race and color, when purposely placed within sight-view of grandparents home-a-history does magnified in, "contexts, First Amendment violations freedom of expression "right to be let alone."

### THIRD CAUSE OF ACTION

105.     **Plaintiff, re-alleges 1 through 104 above and herein, cause of action for violations of 42 U.S.C. § 1985(3) "Conspiracy to interfere with civil rights" in so far two or more persons deprive any person, or cause to be done, any act in furtherance such conspiracy...is injured in his person or property, deprived of having and exercising any right or privilege of any citizen of United States..., may have an action for recovery of damages; and, 42 U.S.C. § 1986 "Affirmative duty to prevent or failure to prevent" a violation of § 1985, in pertinent part, encompass, that local municipality "shall make or enforce any law abridge privileges or immunities..., nor shall deprive any person of life, liberty, or property[], without due process**

of law…" 5th and 14th Amendments to United States Constitution. Therefore, incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 105, as above, includes the following:

106.    Mayor Liz Lambert, Jim Levine, Maria Evans, Elizabeth Kim, Shirley Satterfield, Leticia Fraga, Seth Hinshaw, John Bailey, Barbara Hillier, Robert Hillier, Timothy Andrews, Marion Davis, and those others yet to be joined as party to this action, together, with a few White elites also unnamed and yet to be identified, did join in tacit or explicit agreement, began in 2016, come together as a cabal, with plan, and carried-out with stealth, their scheme abuse of power by "double voting" on 'Black issues' affecting plaintiff, is their racially inspired animus conducted under cover of and with permission of municipality Sanctuary Jurisdiction, to granting "preferential treatment" a public funded art project of Hispanic-mural for illegal-immigrants of whom those not citizens, in violation 42 U.S.C. § 1985-1986.

107.    Defendants, scheme designed misuse government authority joining in with and by reason a vote while a City Council member, when also on Historic Preservation Commission, or same time on Art Selection Committee, and, or same moment an employee or official representing Arts Council of Princeton, are individuals White elites taking unconstitutional advantage "double vote" from several different platforms racially discriminatory abuse when in official duty, and authority, and in doing so, their plan, of discriminatory "double voting" from several different or various committees, and commissions, as in furtherance of, or failure to prevent, irreparable harm and permanent injury from corrupted governmental process, in violation 42 U.S.C. § 1985-1986.

108.    Defendants, a cabal, insisted on part of plan to be defraud federal grant awards or when instituting programs falsely alleged promote art projects and cultural "diversity" but failed to prevent deprivation of plaintiff's equal civil rights of First Amendment freedom for "a right to be let alone" is when White elites wanton and malicious acts of unethical, and prejudice with racial bias in governmental process. Is a secret organization or on behalf of racially biased animus, to discourage heritage being central of Black-American plaintiff's property right left alone and without interference Hispanic mural, are violations of 8 U.S.C. § 1373; 42 United States Code (U.S.C.), 1985-1986; NEA guidelines and Section- 106 of NHPA, along with failure to prevent gross harm done and irreparable injury by reason violation plaintiff's constitutional protections of 1st, 5th, 9th, and 14th Amendments to United States Constitution.

109.    Defendants, to accomplished their aim, joined, and in a secretive scheme Sanctuary Jurisdiction tailored to perform outside boundary of own sovereignty, but for additional to purposely nullify, or contradict constitutionally lawful mechanism of tried and true Separation of Powers; and, did, thereby, schemed to deliberately thwart equity, Separation of Powers, is to allow discriminatory

"preferential treatment" with by extraordinary favoritism to a sole group, Hispanic non-citizens those illegal immigrants; 42 U.S.C. § 1985-1986.

110.    Municipal leaders, Arts Council, and a few wealthy White elites, came together for a sinister plan of a Sanctuary Jurisdiction for Hispanic class non-citizens and illegal aliens to take over and push out Black-citizen class from their landmark district of historic property on National Register, and is on information and belief the motivation and intent to displace plaintiff, and his class, is in progress ongoing that for commercial enterprise gentrification of entire Black community, and for reasons discriminatory against Blacks; 42 U.S.C. § 1985-1986.

## PRAYER FOR RELIEF

**WHEREFORE, Plaintiff pray for relief as follows:**

**1.    For an order that defendants halt, immediate, forthwith any and all mural paintings within the W-J. and at once forthwith remove Hispanic-mural presently stationed on wall of building within historic Black landmark district, to cease further discriminatory action that demean, and threaten to remove historic Black-American 'tradition[]' cultural identity. A heritage, as property right: when father, as a young teenager first arriving in Princeton, New Jersey, he settled in small historic black enclave, now known as "Witherspoon-Jackson" (W-J) proud Black community formerly a prominent history point in 'Underground Railroad' safety, security, freedom of dignity, and most crucial "a right to be let alone" for run-a-way slaves those escaping horrors of inhumanity, or horrific tortures of being in deep Southern States. Father, having lived on a farm located in Smithfield, North Carolina, he threw-off all brutality including enforced family slave name of "Sanders," and became Saunders; only to find that in W-J, controlled by White wealthy bigots, a strict racial segregation municipality policy, and practice unyielding and to date, although subtle, as in form of White elites special treatment for any other group other than Blacks. He married Emma McGowan, daughter of George and Edith 'Lane' McGowan. Edith, was original employee of Educational Testing Service ("ETS"), where she retired after serving over 35 years. Grandfather, George, served in armed forces, World War I, with "Harlem Hellfighters" in French Infantry Regiment. George, following the war, made his home in the W-J. Edith was a "Lane," wherein her great-grandfather is alleged, [records and history books concur], "Samuel Lane married niece of Betsy Stockton." Betsy, born into slavery, is iconic American-Black woman, was a revered and historic teacher within the W-J, and partly because, of her contributions, in to 2016 the W-J designated as Landmark**

district on National Register. The indication is, relief set on strong foundation of "traditions" Black cultural arise out of heritage sustained, but only if by full import of that meaning: Black history repeats itself. From era of slavery, to present, and for generations, so as, plaintiff, respectfully request for this Courts order halting, at once, and for ever more, defendants interference with harmony of the W-J, the destruction of "tradition" heritage; and,

2.      For compensatory and punitive damages done to Plaintiff, an interference cause the artist lost of freedom, and time, to conduct unrestrained artwork: cause him enormous and constant worry, interrupt performance, and as consequence, dire situation, from defendants causing plaintiff unbearable humiliation, emotional distress, acerbating and for heighten life-threatening stress, gross mental anguish, horrific trauma, from great suffering harm a permanent injury traced to defendants actions, and inactions, or failure to prevent, and the willful neglect; and,

3.      For result Compensatory, and Punitive damages, each, and to make plaintiff whole, is sought from or arise from causes art project a mural having discriminatory result, is in an amount damages $3,000,000.03, or to be determined later on in these proceedings, or to be proven at trial; and,

4.      That honorable Judge of this Court, make an order that copy of complaint be served upon defendants, and if by regular postal mail, with proof signed certified return, and at no or other and further costs to plaintiff *in forma paupers,* Pro se; and,

5.      That honorable Judge of this Court declare Town of Princeton, New Jersey, municipality policy, pattern, and practice "preferential treatment" by Sanctuary Jurisdiction, unconstitutional, or discriminatory against plaintiff and because he Black-American citizen, and cause great harm and permanent property damage to right of heritage preserved; and,

6.      By order of this Court, on new evidence of plaintiff, pro se, seeking appointment of counsel for Disabled-American litigant entitled to "benefit" reasonable accommodations under Social Security Act, allowing him to present, timely, a renewed-motion with additional evidence for granting request relief court appointed attorney; and,

7.      Whereinfore, plaintiff, a recognized Photojournalist for over five decades, currently retired, also with conduct Artist/painter in continuum is since age five years old; did, prior to filing this lawsuit, convey, with emphasis, to defendants, his desire not[] to have involvement in civil litigation, and that such interferes with forward destiny ongoing are art projects of substantial significance to people of color, eliminate on Black "traditions" that relevant to all Americans, progress now being disrupted.

8.      Thus, for such other and further relief as this Court deems just and proper.

Dated:  **December 13, 2019**

Respectfully submitted,

William Hardy Saunders, Jr,
Artist & Photographer
Elm Court
300 Elm Road #225
Princeton, New Jersey 08540
(609) 454-3766
*wsartistphotographer@yahoo.com*

By: _____
*William Hardy Saunders, Jr.*

***Pro Se: Plaintiff***


## DEMAND FOR JURY TRIAL

Plaintiff, demand a jury trial on all causes of actions, clams, allegations, to which plaintiff have a right to a jury trial.

Dated: December 13, 2019

Respectfully Submitted:

William Hardy Saunders, Jr,
Artist & Photographer
Elm Court
300 Elm Road #225
Princeton, New Jersey 08540
(609) 454-3766
*wsartistphotographer@yahoo.com*

By: _____
*William Hardy Saunders, Jr.*